**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Cr. No. <u>15-cr-10011-JDB</u>** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **BRYAN BAILEY** | ) | **18 U.S.C. § 2** |
| **CALVIN BAILEY** | ) | **18 U.S.C. § 371** |
| **SANDRA BAILEY and** | ) | **18 U.S.C. § 1347** |
| **CINDY MALLARD,** | ) | **42 U.S.C. § 1320a-7b(b)(2)(A)** |
| | ) | |
| **Defendants.** | ) | |

# <u>S U P E R S E D I N G   I N D I C T M E N T</u>

**THE GRAND JURY CHARGES:**

## <u>INTRODUCTION</u>

At all times material to this Indictment:

      1.    Defendants **SANDRA BAILEY** and **CALVIN BAILEY** and two individuals who have been charged elsewhere, **Brenda Sensing** and **Dennis Sensing**, worked either directly or indirectly in the business of selling durable medical equipment, including power wheelchairs and back braces. Defendants **SANDRA BAILEY** and **CALVIN BAILEY** were employed as salespersons at Jaspan Medical Systems (hereinafter "Jaspan") from on or before November 20, 2009 to on or about September 9, 2011. Defendant **CALVIN BAILEY** was employed as a salesperson at Apple Independence Mobility, LLC ("Apple") from approximately June 18, 2012 to on or after May 13, 2013. **Dennis Sensing** was employed as a salesperson at Jaspan from approximately July 2010 to January 2011. **Brenda Sensing** was employed as a

salesperson at Jaspan from approximately December 2010 to June 2013.

2.      Despite being listed as salespersons for Jaspan and receiving commission payments as salespersons, defendant **CALVIN BAILEY** and **Brenda Sensing** did not in fact work as salespeople. Rather, defendant **CALVIN BAILEY** received commissions for sales by defendant **SANDRA BAILEY** and **Brenda Sensing** received commissions for sales by **Dennis Sensing.**

3.      Defendant **BRYAN BAILEY** was employed as the operations manager at Jaspan from approximately December 2009 to July 2013.

4.      In addition to working as salespersons for Jaspan, **Brenda Sensing** and **Dennis Sensing** operated Adult and Children Medical Clinic (hereinafter "ACMC") in Guntown, Mississippi from approximately November 2010 to June 2013.

5.      Jaspan was a durable medical equipment company with an office in Jackson, Tennessee.

6.      Defendant **CINDY MALLARD** worked in health-care-related positions. From before November 20, 2009 until approximately June 17, 2011, Defendant **CINDY MALLARD** was employed as an office manager at Medina Family Medical Clinic (hereinafter "MFMC") in Medina, Tennessee. From approximately June 17, 2011 to approximately September 7, 2012, Defendant **CINDY MALLARD** was employed as a salesperson at Jaspan.

## HEALTH CARE BENEFIT PROGRAMS

7.      Section 24(b) of Title 18, United States Code, defines a "health care benefit program" as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." Medicare, Medicaid and TriCare are Health Care Benefit Programs.

## MEDICARE PROGRAM

8.      The federal Medicare program is a medical insurance program funded by the United States government, which provides reimbursement for medical care to persons over the age of 65 and certain other persons, including some disabled persons under the age of 65, without regard to personal financial means or income.

9.      Medicare is administered by the United States Department of Health and Human Services (HHS) through its division, the Centers for Medicare and Medicaid Services (CMS).

10.      One of Medicare's components, Medicare Part B, provides medical insurance coverage for eligible patients receiving physician services, outpatient care, home health services and other medical services. Among items covered under Medicare Part B is provision of durable medical equipment that is necessary for a patient's treatment and has been ordered by licensed medical doctors or other qualified health care providers. Durable medical equipment is reusable medical equipment designed for repeated use and for a medical purpose, including such items as electric or

motorized wheelchairs, also known as a "power wheelchairs," and back braces.

11.     Medicare will pay for a power wheelchair on behalf of a Medicare patient only if a power wheelchair is prescribed as necessary for the patient by a qualified physician, nurse practitioner or clinical nurse specialist (collectively, "providers"). Pursuant to Section 302(a)(2) of the Medicare Prescription Drug, Improvement and Modernization Act of 2003, a power wheelchair may not be ordered for a patient unless a provider conducts a face-to-face examination of the patient. The provider evaluates the necessity of the power wheelchair by considering such factors as whether without the use of a power wheelchair, the patient would otherwise be bed or chair confined; whether the patient's condition is such that a wheelchair is medically necessary; whether the patient is unable to operate a wheelchair manually; and whether the patient is capable of safely operating the controls of the power wheelchair.  A patient who requires a power wheelchair usually is totally non-ambulatory and has severe weakness of the upper extremities due to a neurologic or muscular disease/condition.

12.     The patient must at minimum meet all of the following three basic coverage criteria to meet medical necessity requirements: (1) the patient has a mobility limitation that significantly impairs his or her ability to participate in one or more Mobility-Related Activities of Daily Living (MRADL's) such as toileting, feeding, dressing, grooming, and bathing in customary locations in the home. A mobility limitation is a limitation that (a) prevents the patient from accomplishing an MRADL entirely or within a reasonable time frame; or (b) places the patient at reasonably determined heightened risk of morbidity or mortality as a result of the attempts to perform an MRADL; (2) the

patient's mobility limitation cannot be resolved sufficiently and safely by using an appropriately fitted cane or walker; and (3) the patient does not have sufficient upper extremity function to self-propel an optimally configured manual wheelchair in the home to perform MRADLs during a typical day. Limitations of strength, endurance, range of motion or coordination, and presence of pain; or deformity or absence of one or both upper extremities are relevant to the assessment of upper extremity function. The power wheelchair must be usable within the patient's home.

13.     Once a provider writes a prescription for a power wheelchair, the patient can obtain the power wheelchair from a durable medical equipment supplier, which makes a claim to the regional Medicare contractor to obtain payment for the power wheelchair and provides the power wheelchair to the patient. The durable medical equipment supplier must obtain from the provider, among other things, a prescription and documentation of the face-to-face examination. Documentation of the face-to-face examination is generally made in a Progress Note, which must document why the patient needs a power wheelchair. The Progress Note must be signed and dated by the provider making the evaluation of the patient. The Progress Note is frequently accompanied by an addendum that provides additional information about the face-to-face evaluation and the patient's need for a power wheelchair. The durable medical equipment supplier must maintain files containing the prescription and documentation of the face-to-face examination.

## MEDICAID PROGRAM

14.    Medicaid is the federal insurance program that provides services to qualifying indigent and uninsured individuals.   The Tennessee Medicaid program, known as TennCare, is funded by the federal government and the State of Tennessee. The Mississippi Medicaid program is funded by the federal government and the State of Mississippi.

## TRICARE PROGRAM

15.    TriCare is a federally-funded medical benefit program providing insurance for active duty and retired uniformed services personnel and for their spouses and children (before and after the uniformed services personnel are deceased).

## COUNT ONE

16. Paragraphs 1 through 15 are incorporated herein by reference.

### The Conspiracy

17.    Beginning in or before November 2009 and continuing through at least April 2013, in the Western District of Tennessee, and elsewhere, defendant **BRYAN BAILEY** did knowingly and intentionally combine, conspire, confederate and agree with defendant **SANDRA BAILEY** and with **Dennis Sensing**, who has been charged elsewhere, aided and abetted each by the other and by defendants **CALVIN BAILEY** and **CINDY MALLARD,** and **Brenda Sensing**, who has been charged elsewhere, and with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

> (a)    Health care fraud, that is, knowingly and willfully executing, and attempting to execute a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses,

representations and promises, money and property owned by, and under the control of Medicare, a healthcare benefit program, as defined in   Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health benefits, items and services, in violation of Title 18, United States Code, Section 1347; and

(b)   Paying and receiving illegal remuneration, that is, knowingly and willfully offering, paying and receiving any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person or from any person or entity to induce such person to refer an individual or as an inducement to refer individuals for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program, namely, Medicare, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

Object of the Conspiracy

18.   It was the object of the conspiracy that Defendants **BRYAN BAILEY, CALVIN BAILEY, SANDRA BAILEY** and **CINDY MALLARD,** and **Brenda Sensing** and **Dennis Sensing** unlawfully enriched themselves by receiving payments from other conspirators and commission payments from Jaspan in the Western District of Tennessee for sales of wheelchairs to Medicare (1) for patients who had not been properly evaluated for power wheelchairs; (2) for patients who had been referred to the defendants by individuals in various communities in the Western District of Tennessee and the Northern District of Mississippi (collectively referred to as "referral sources") who had been paid kickbacks to identify Medicare patients; and (3) for patients who had been evaluated by providers who had been paid kickbacks to see patients.

Manner and Means of the Conspiracy and Scheme to Defraud

19.   The manner and means by which the conspiracy and the scheme and

artifice to defraud functioned is more particularly set forth as follows:

(a)     Defendant **SANDRA BAILEY** and **Dennis Sensing** paid referral sources to identify Medicare patients to whom the defendants marketed power wheelchairs and back braces.

(b)     After a referral source identified a potential patient or group of patients, defendants **CALVIN BAILEY**, **SANDRA BAILEY, or CINDY MALLARD**, or **Dennis Sensing,** or some combination of these individuals visited the patient or contacted the patient by telephone to arrange to visit the patient or to obtain medical and insurance information. The defendants informed the patients that they would not have to pay anything for the wheelchairs. Medicare paid 80 percent of the wheelchair costs. For patients who had secondary insurance, including TennCare, Mississippi Medicaid, TriCare or private insurance, those secondary carriers paid the remaining costs for the wheelchair. For those patients without secondary insurance, the defendants helped the patients fill out forms that would waive the requirement for any additional payment by Medicare.

(c)     In some cases, the defendants arranged for a delivery of a power wheelchair to a patient without meeting the patient in person.

(d)     In some cases, a provider visited the patient and conducted a face-to-face evaluation. In some of those cases, the provider who visited the patient had been paid kickbacks by defendant **SANDRA BAILEY.**

(e)     In other cases, no provider visited the patient or conducted a face-to-face evaluation. In the Western District of Tennessee, in many of those cases, **DEFENDANT CINDY MALLARD** filled out the Progress Note, either by visiting the patient or based on information provided to her. The Progress Note was then submitted to a provider at MFMC, who signed the prescription despite never having conducted a face-to-face evaluation of the patient. In the Northern District of Mississippi, **Dennis Sensing** or **Brenda Sensing** often forged a provider's signature.

(f)     During the period when defendant **CINDY MALLARD** was employed as the Office Manager at MFMC, defendant **CINDY MALLARD** received kickback payments on behalf of Provider 1 at MFMC from defendant **SANDRA BAILEY**. Defendant **SANDRA BAILEY** later provided kickback payments to Provider 2 at MFMC.

(g)     After a patient's Progress Note and Prescription were signed, the documents were forwarded to Jaspan in Jackson, Tennessee.

(h)     Patient documents were reviewed by Jaspan employees to ensure files were complete before billing for medical devices for the patients. In some cases, defendants **BRYAN BAILEY** or **SANDRA BAILEY** arranged for editing of the documents in the files without a provider's involvement or knowledge in order to justify billing for a medical device.

(i)     After the file was complete, a wheelchair was ordered and delivered. Jaspan billed Medicare for the wheelchairs.

(j)     At least some of the patients did not need and could not meet the requirements for power wheelchairs. Some of these patients never used the wheelchairs they later received or used the wheelchairs for a limited time. Some of the patients lived in residences in which the power wheelchairs could not be maneuvered.

(k)     Either defendant **SANDRA BAILEY**, defendant **CALVIN BAILEY,** defendant **CINDY MALLARD,** or one of the defendants' family members, or **Dennis Sensing** or **Brenda Sensing** was then paid a commission for each wheelchair sale. In addition, defendant **BRYAN BAILEY** received commissions for sales of power wheelchairs and back braces by Jaspan salespersons, including the other defendants and **Brenda Sensing** and **Dennis Sensing.**

Manner and Means of the Conspiracy and Scheme to Defraud

20.     On or about the dates set forth in the table below, during the pendency of the conspiracy, the defendants engaged in the following overt acts, in the Western District of Tennessee and elsewhere, at least one of which furthered and effected the goals of the combination, conspiracy, confederation and agreement:

| Overt Act No. | Date | Act |
|---|---|---|
| 1 | 11.28.2009 | Jaspan delivered a power wheelchair to patient PT, for whom defendant **CINDY MALLARD** had filled out a Progress Note signed by a MFMC provider**.** Prior to delivery of the wheelchair, PT was visited by Referral |

| Overt Act No. | Date | Act |
|---|---|---|
| | | Source 1, whom defendant **SANDRA BAILEY** had paid kickbacks. Referral Source 1 told PT that PT needed to get the wheelchair then because Medicare was going to stop paying for wheelchairs. PT was never evaluated for a power wheelchair by any qualified provider. |
| 2 | 11.28.2009 | Jaspan delivered a power wheelchair to patient RR, for whom defendant **CINDY MALLARD** had filled out a Progress Note signed by a MFMC provider**.** RR had told defendant **SANDRA BAILEY** that she did not want or need a power wheelchair and that wheelchairs make RR feel old, but defendant **SANDRA BAILEY** told RR that wheelchairs might no longer be available if RR later needed one. |
| 3 | 11.28.2009 | Defendant **CINDY MALLARD** filled out a Progress Note signed by a MFMC provider for patient BB**.** The provider never made a face-to-face evaluation of BB. Defendant **SANDRA BAILEY** accompanied defendant **CINDY MALLARD** when defendant **CINDY MALLARD** visited BB. Defendant **SANDRA BAILEY** later received the sales commission for the sale of a power wheelchair for BB. |
| 4 | Between on or about November 30, 2009 and April 18, 2013, exact dates unknown to Grand Jury | Defendant **SANDRA BAILEY** paid remuneration to Referral Source 2 for the referral of Medicare patients for power wheelchairs and back braces. |
| 5 | 12.4.2009 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $7,068.72 into her bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for RR. |
| 6 | 12.4.2009 | Defendants **BRYAN BAILEY, SANDRA BAILEY** and **CINDY MALLARD**, each aided and abetted by the other, caused Jaspan to deposit $1,129.75 into the account of defendant **CINDY MALLARD'S** husband, with a portion of that amount attributable to a commission for the sale of a wheelchair for BB. |

| Overt Act No. | Date | Act |
|---|---|---|
| 7 | 12.15.2009 | Defendant **SANDRA BAILEY** paid Referral Source 3 for the referral of patients including patients EK, MC, TM, BB2, MP and VB. |
| 8 | Between on or about December 15, 2009 and on or about April 18, 2013, exact dates unknown to Grand Jury | Defendant **SANDRA BAILEY** paid remuneration to Referral Source 4 for the referral of Medicare patients for power wheelchairs and back braces. |
| 9 | 12.18.2009 | Defendants **CALVIN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $2,515.86 into defendant **CALVIN BAILEY'S** bank account, with a portion of that amount attributable to commissions for the sales of wheelchairs for MC and BB2. |
| 10 | 12.26.2009 | Defendant **CINDY MALLARD** filled out a Progress Note signed by a MFMC provider for patient EC. Defendant **CALVIN BAILEY** had marketed the wheelchair to EC and later received the sales commission for the sale of a power wheelchair for EC. EC told defendant she did not need a power wheelchair. |
| 11 | 12.26.2009 | Defendant **CINDY MALLARD** filled out a Progress Note signed by a MFMC provider for patient CR. The provider never made a face-to-face evaluation of CR. Defendant **CINDY MALLARD'S** husband later received the sales commission for the sale of a power wheelchair for CR. |
| 12 | 12.31.2009 | Defendants **CALVIN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $2,665.86 into defendant **CALVIN BAILEY'S** bank account, with a portion of that amount attributable to commissions for the sales of wheelchairs for MP, VB and EC. |
| 13 | 12.31.2009 | Defendants **BRYAN BAILEY, SANDRA BAILEY** and **CINDY MALLARD**, each aided and abetted by the other, caused Jaspan to deposit $1,129.75 into the account of defendant **CINDY MALLARD'S** husband, |

| Overt Act No. | Date | Act |
|---|---|---|
| | | with a portion of that amount attributable to a commission for the sale of a wheelchair for CR. |
| 14 | Between approximately January 2010 and June 2013 | Defendant **BRYAN BAILEY** arranged for falsification of forms so that certain power wheelchair recipients avoided financial responsibility for the 20 percent of the cost not covered by Medicare. |
| 15 | 1.29.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $6,805.74 into her bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for EK. |
| 16 | 2.6.2010 | Defendant **CINDY MALLARD** filled out a Progress Note signed by a MFMC provider for patient JC**.** The provider never made a face-to-face evaluation of JC. JC told defendant **SANDRA BAILEY** that JC did not need a wheelchair, but defendant **SANDRA BAILEY** said that President Obama might pass laws that would prevent JC from getting a wheelchair. Defendant **SANDRA BAILEY** later received the sales commission for the sale of a power wheelchair for JC. |
| 17 | 2.6.2010 | Defendant **CINDY MALLARD** filled out a Progress Note signed by a MFMC provider for patient CC**.** The provider never made a face-to-face evaluation of CC. CC told defendant **SANDRA BAILEY** that CC did not need a wheelchair, but defendant **SANDRA BAILEY** said that President Obama might pass laws that would prevent CC from getting a wheelchair. Defendant **SANDRA BAILEY** later received the sales commission for the sale of a power wheelchair for CC. |
| 18 | 2.6.2010 | Defendant **SANDRA BAILEY** offered to pay JC and CC $50 per person if JC and CC referred other individuals who could use a wheelchair. |
| 19 | 2.26.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $6,736.91 into her bank account, with a portion of that amount attributable to commissions for sales of wheelchairs for JC and CC. |

| Overt Act No. | Date | Act |
|---|---|---|
| 20 | Between on or about April 1, 2010 and on or about July 2, 2010, exact dates unknown to Grand Jury | Defendant **SANDRA BAILEY** paid remuneration to Referral Source 5 for the referral of Medicare patients, including CP, MF, IM, HK, CW, MF2, DS, JS, WS, EM, MT, RH, MH, PB, RT, WT, JB, FC, CA, BC, JC2, IH, NL, WL, EL, BM, JM, DM MM, DP, BP, TS, VW, LB and TM, for power wheelchairs and/or back braces. |
| 21 | 4.23.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $7,006.14 into her bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for CP. |
| 22 | 5.7.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $7,270.73 into her bank account, with a portion of that amount attributable to commissions for the sales of wheelchairs for WL and JM. |
| 23 | 5.7.2010 | Defendants **BRYAN BAILEY, SANDRA BAILEY** and **CINDY MALLARD**, each aided and abetted by the other, caused Jaspan to deposit $1,124.87 into the account of defendant **CINDY MALLARD'S** daughter, with a portion of that amount attributable to a commission for the sale of a wheelchair for MT. |
| 24 | 5.7.2010 | Defendants **BRYAN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $1,555.18 into the account of defendant **BRYAN BAILEY'S** wife at that time, with a portion of that amount attributable to a commission for the sale of a wheelchair for RH. |
| 25 | 5.7.2010 | Defendants **CALVIN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $2,516.28 into defendant **CALVIN BAILEY's** bank account, with a portion of that amount attributable to commissions for the sales of wheelchairs for MH and DP. |
| 26 | 6.18.2010 | Defendants **CALVIN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $2,591.28 into defendant **CALVIN BAILEY's** bank account, with a portion of that amount attributable |

| Overt Act No. | Date | Act |
|---|---|---|
| | | to commissions for the sales of wheelchairs for PB and RT. |
| 27 | 6.18.2010 | Defendants **BRYAN BAILEY** and **SANDRA BAILEY,** each aided and abetted by the other, caused Jaspan to deposit $3,609.45 into defendant **BRYAN BAILEY's** bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for WT. |
| 28 | 6.18.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $6,951.64 into her bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for MF. |
| 29 | 7.2.2010 | Defendants **CALVIN BAILEY** and **SANDRA BAILEY,** each aided and abetted by the other, caused Jaspan to deposit $2,516.28 into defendant **CALVIN BAILEY's** bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for JB. |
| 30 | 7.2.2010 | Defendants **BRYAN BAILEY** and **SANDRA BAILEY,** each aided and abetted by the other, caused Jaspan to deposit $2,926.18 into the account of defendant **BRYAN BAILEY'S** wife at that time, with a portion of that amount attributable to commissions for the sales of wheelchairs for FC and LB. |
| 31 | 7.2.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $6,386.74 into her bank account, with a portion of that amount attributable to commissions for sales of wheelchairs for IM, HK, MF2, DS, JS and WS. |
| 32 | 7.16.2010 | Defendants **CALVIN BAILEY** and **SANDRA BAILEY,** each aided and abetted by the other, caused Jaspan to deposit $2,389.04 into defendant **CALVIN BAILEY's** bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for TM. |
| 33 | 7.16.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $6,311.99 into her bank account, with a portion of that amount attributable to commissions for sales of wheelchairs for CW, DM and EM. |

| Overt Act No. | Date | Act |
|---|---|---|
| 34 | 7.16.2010 | Defendants **BRYAN BAILEY, SANDRA BAILEY** and **CINDY MALLARD**, each aided and abetted by the other, caused Jaspan to deposit $1,124.87 into the account of defendant **CINDY MALLARD'S** daughter, with a portion of that amount attributable to a commission for the sale of a wheelchair for MM. |
| 35 | 7.30.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $7,675.73 into her bank account, with a portion of that amount attributable to commissions for the sales of wheelchairs for EL and BP. |
| 36 | 7.30.2010 | Defendants **BRYAN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $5,633.67 into defendant **BRYAN BAILEY's** bank account, with a portion of that amount attributable to commissions for the sales of wheelchairs for CA and BC. |
| 37 | 7.30.2010 | Defendants **BRYAN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $1,063.07 into the account of defendant **BRYAN BAILEY'S** wife at that time, with a portion of that amount attributable to a commission for the sale of a wheelchair for IH. |
| 38 | Between on or about August 1, 2010 and on or about October 1, 2010, exact dates unknown to Grand Jury | Defendant **SANDRA BAILEY** paid remuneration to Provider 2 to evaluate patients for power wheelchairs and back braces. |
| 39 | 8.13.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $7,155.99 into her bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for JC2. |
| 40 | 9.10.2010 | Defendants **BRYAN BAILEY** and **SANDRA BAILEY**, each aided and abetted by the other, caused Jaspan to deposit $1,063.07 into the account of defendant **BRYAN BAILEY'S** wife at that time, with a portion of that amount attributable to a commission for the sale of |

| Overt Act No. | Date | Act |
|---------------|------|-----|
| | | a wheelchair for VW. |
| 41 | 9.10.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $6,409.35 into her bank account, with a portion of that amount attributable to commissions for the sales of wheelchairs for BM and TS. |
| 42 | 10.22.2010 | Defendant **SANDRA BAILEY** caused Jaspan to deposit $7,849.63 into her bank account, with a portion of that amount attributable to a commission for the sale of a wheelchair for NL. |
| 43 | 02.21.2011 | Defendant **SANDRA BAILEY** caused orders for a power wheelchair and a back brace for patient JW, who had been identified by Referral Source 2 and for whose wheelchair and back brace defendant **SANDRA BAILEY** was paid a commission. |
| 44 | 03.15.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient DB, who had been identified by Referral Source 2 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 45 | 03.21.2011 | Defendant **SANDRA BAILEY** caused orders for a power wheelchair and a back brace for patient HB, who had been identified by Referral Source 2 and for whose wheelchair and back brace defendant **SANDRA BAILEY** was paid a commission. |
| 46 | 03.21.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient JH, who had been identified by Referral Source 2 and for whose wheelchair defendant **SANDRA BAILEY** was paid a commission. |
| 47 | 03.21.2011 | Defendant **SANDRA BAILEY** caused orders for a power wheelchair and a back brace for patient LH, who had been identified by Referral Source 2 and for whose wheelchair and back brace defendant **CALVIN BAILEY** was paid a commission. |
| 48 | 03.21.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient ER, who had been |

| Overt Act No. | Date | Act |
|---|---|---|
| | | identified by Referral Source 4 and for whose wheelchair defendant **SANDRA BAILEY** was paid a commission. |
| 49 | 04.11.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient CH, who had been identified by Referral Source 4 and for whose wheelchair defendant **SANDRA BAILEY** was paid a commission. |
| 50 | 04.25.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient CB, who had been identified by Referral Source 4 and for whose wheelchair defendant **SANDRA BAILEY** was paid a commission. |
| 51 | 05.13.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient JC2, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 52 | 05.13.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient WL, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 53 | 05.13.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient RT, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 54 | 05.13.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient WT, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 55 | 05.13.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient ET, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 56 | 05.13.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient TM, who had been identified by |

| Overt Act No. | Date | Act |
|---|---|---|
|  |  | Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 57 | 05.20.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient CP, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
|  |  |  |
| 58 | 05.20.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient AN, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 59 | 05.23.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient MG, who had been identified by Referral Source 4 and for whose wheelchair defendant **SANDRA BAILEY** was paid a commission. |
|  |  |  |
| 60 | 06.13.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient TT, who had been identified by Referral Source 4 and for whose wheelchair defendant **SANDRA BAILEY** was paid a commission. |
| 61 | 06.13.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient VS, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 62 | 06.27.2011 | Defendant **SANDRA BAILEY** caused orders for a power wheelchair and a back brace for patient PL, who had been identified by Referral Source 2 and for whose wheelchair and back brace defendant **SANDRA BAILEY** was paid a commission. |
| 63 | 06.27.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient JJ, who had been identified by Referral Source 4 and for whose |

| Overt Act No. | Date | Act |
|---|---|---|
| | | wheelchair defendant **CALVIN BAILEY** was paid a commission. |
| 64 | 07.25.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient CG, who had been identified by Referral Source 4 and for whose wheelchair defendant **SANDRA BAILEY** was paid a commission. |
| 65 | 07.25.2011 | Defendant **SANDRA BAILEY** caused an order for a back brace for patient MJ, who had been identified by Referral Source 5 and for whose back brace defendant **SANDRA BAILEY** was paid a commission. |
| 66 | 10.17.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient CL, who had been identified by Referral Source 2 and for whose wheelchair defendant **CINDY MALLARD'S** daughter was paid a commission. |
| 67 | 12.10.2011 | Defendant **SANDRA BAILEY** caused an order for a power wheelchair for patient JR, who had been identified by Referral Source 2 and for whose wheelchair defendant **CINDY MALLARD'S** daughter was paid a commission. |
| 68 | 1.25.2012 | **Dennis Sensing** and **Brenda Sensing** paid EC $50 for the referral of a patient identified by the initials LY. |
| 69 | 11.26.2012 | **Brenda Sensing** forged the signature of an ACMC provider on a progress note for an ACMC patient to facilitate ordering a wheelchair for the patient. |
| 70 | 12.07.2012 | **Dennis Sensing** forged the signature of an ACMC provider attesting to the accuracy of medical records for a patient purportedly seen by the provider on or about April 20, 2012. |
| 71 | 12.14.2012 | **Dennis Sensing** forged the signature of an ACMC provider attesting to the accuracy of medical records for a patient purportedly seen by the provider on or about October 2, 2012. |

| Overt Act No. | Date | Act |
|---|---|---|
| 72 | 12.14.2012 | **Brenda Sensing** was paid $6,750.00 in commission by JMS for sales of durable medical equipment provided to ACMC patients. |
| 73 | 1.14.2013 | **Brenda Sensing** and **Dennis Sensing** created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient KL, and forged the provider's signature on the addendum. |
| 74 | 1.14.2013 | **Brenda Sensing** and **Dennis Sensing** created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient ST, and forged the provider's signature on the addendum. |
| 75 | 1.14.2013 | **Brenda Sensing** and **Dennis Sensing** created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient DM, and forged the provider's signature on the addendum. |
| 76 | 1.14.2013 | **Brenda Sensing** and **Dennis Sensing** created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient SB, and forged the provider's signature on the addendum. |
| 77 | 1.14.2013 | **Brenda Sensing** and **Dennis Sensing** created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient MS, and forged the provider's signature on the addendum. |
| 78 | 1.14.2013 | **Brenda Sensing** and **Dennis Sensing** created an addendum purportedly reflecting observations made by the provider during a face-to-face evaluation of patient BS, and forged the provider's signature on the addendum. |
| 79 | 1.19.2013 | Defendant **CALVIN BAILEY** reserved a hotel room at the Quality Inn in Covington, Tennessee for the |

| Overt Act No. | Date | Act |
|---|---|---|
| | | evaluation of patients for power wheelchairs. |
| 80 | 1.19.2013 | Defendant **CALVIN BAILEY** drove referral sources and patients, including Referral Source 4 and patient RW to the Quality Inn in Covington, Tennessee to be evaluated for power wheelchairs and back braces. |
| 81 | 1.19.2013 | At the instruction of defendant **SANDRA BAILEY**, defendant **CALVIN BAILEY** stopped to pick up a cane for RW to make him appear more in need of a power wheelchair. |
| 82 | 1.28.2013 | Defendant **BRYAN BAILEY** caused a facsimile to be sent to **Brenda Sensing** and **Dennis Sensing** directing them to edit the addenda for KL, ST, DM, SB, MS and BS, each of which were created by **Brenda Sensing** and **Dennis Sensing** on or about January 14, 2013. |
| 83 | 2.9.2013 | Defendant **CALVIN BAILEY** drove referral sources and patients, including Referral Source 4, to the Super 8 Motel in Ripley, Tennessee to be evaluated for power wheelchairs and back braces. |
| 84 | 4.8.2013 | Defendant **SANDRA BAILEY** paid Referral Source 6, and Referral Source 6 referred patients VM, GC and MR. Defendant **CALVIN BAILEY** received the commissions for sales of back braces for each of these patients. |
| 85 | 4.25.2013 | Defendant **SANDRA BAILEY** paid Referral Source 6 and gave Referral Source 6 a gift, and Referral Source 6 referred patient DP. Defendant **CALVIN BAILEY** received the commission for a back brace provided to DP. |

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO TO NINE

21.    On or about the dates set forth below, in the Western District of

Tennessee, and elsewhere, the defendant

-------------------------------------------- **SANDRA BAILEY** --------------------------------------------

did knowingly and willfully execute and attempt to execute the scheme and artifice described at paragraph 16 above to defraud and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by and under the custody and control of Medicare, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items and services, in that she caused to be submitted a claim to be filed for an order for a wheelchair for the individuals identified below, knowing that the individuals had not been evaluated by a qualified provider to meet the requirements set forth in paragraph 8 above:

| Count | Date | Patient |
|:-----:|:----:|:-------:|
| 2 | 11.28.2009 | PT |
| 3 | 11.28.2009 | RR |
| 4 | 12.1.2009 | BB |
| 5 | 12.31.2009 | EC |
| 6 | 12.31.2009 | CR |
| 7 | 2.16.2010 | CC |
| 8 | 2.25.2010 | JC |
| 9 | 3.12.2013 | RW |

All in violation of Title 18, United States Code, Section 1347.

## <u>COUNTS TEN TO EIGHTEEN</u>

22.     On or about the dates set forth below, in the Western District of

Tennessee, and elsewhere, the defendant

--------------------------------------------- **SANDRA BAILEY** ---------------------------------------------

did knowingly and willfully offer and pay remuneration (including any kickback, bribe or rebate) directly and indirectly, overtly and covertly, in cash and kind to a person to induce such person to refer an individual to a person for the furnishing, and arranging for the furnishing, of any item and service for which payment may be made in whole or in part under a federal health care program, in that, defendant **SANDRA BAILEY** did knowingly and willfully pay the individuals referenced below remuneration to induce the individuals referenced below to refer persons for the furnishing or arranging for the furnishing of durable medical equipment, including power wheelchairs and back braces, items for which payment may be made in whole or in part, under Medicare, a federal health care program:

| Count | Date | Referring Person |
|-------|------|------------------|
| 10 | Beginning on or before November 30, 2009 and continuing through at least April 2013, the exact dates being unknown to the Grand Jury | Referral Source 2 |
| 11 | Beginning on or before December 15, 2009 2009 and continuing through at least April 18, 2013, the exact dates being unknown to the Grand Jury | Referral Source 4 |
| 12 | Beginning in or before November 2009 and continuing through at least October 2011, the exact dates being unknown to the Grand Jury | Referral Source 1 |
| 13 | Beginning in or before December 2009 and continuing through at least February 2010, the exact dates being unknown to the Grand Jury | Referral Source 3 |
| 14 | Beginning in or about November 2009 and continuing through about July 2010, the exact | Provider 1 |

| | dates being unknown to the Grand Jury | |
|---|---|---|
| 15 | Beginning on or before April 1, 2010 and continuing through at least July 2, 2010, the exact dates being unknown to the Grand Jury | Referral Source 5 |
| 16 | Beginning in or about August 2010 and continuing through about October 2010, the exact dates being unknown to the Grand Jury | Provider 2 |
| 17 | April 8, 2013 | Referral Source 6 |
| 18 | April 25, 2013 | Referral Source 6 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

## COUNT NINETEEN

23.     The allegations contained in paragraphs 1 through 20 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

24.     On or about January 28, 2013, in the Western District of Tennessee, and elsewhere, the defendant

--------------------------------------------- **BRYAN BAILEY** ---------------------------------------------


for the purpose of executing and attempting to execute the scheme and artifice described at paragraph 16 above to defraud and to obtain money and property by means of false and fraudulent pretenses and representations, did cause to be transmitted in interstate commerce by means of wire communications, certain signs, signals and sounds, that is a facsimile from Jaspan Medical Systems in Tennessee to

**Brenda Sensing** and **Dennis Sensing** in Mississippi, in violation of Title 18, United States Code, Section 1343.

**A TRUE BILL**

_____
**F O R E P E R S O N**

_____
**DATE**


**EDWARD L. STANTON III**
**UNITED STATES ATTORNEY**


_____
**VICTOR L. IVY**
**ASSISTANT U.S. ATTORNEY**